UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NEXSUN CORP.,

    Plaintiff,

v.                                          CASE NO.: 8:10-cv-331-T-23AEP

JOHN CONDO, et al.,

    Defendants.
_____/

## **ORDER**

On April 6, 2010, the defendants John Condo; Dupont Alliance, LLC; BBDA Global Investment Fund, LLC; DAC Global, LLC; BBDA Advisors, LLC; and Michael Zanetti moved (Doc. 35) to dismiss or, in the alternative, to stay this action pending arbitration. An April 23, 2010, order (Doc. 38) stays this action pending arbitration and directs the Clerk to administratively close the case. The order (Doc. 38) (1) notes that the plaintiff failed to respond to the motion (Doc. 35); (2) states that the plaintiff sues in connection with an agreement by the defendants to invest in a renewable fuel project; and (3) quotes the "master investment agreement," which requires the parties to arbitrate any dispute "arising in connection with the enforcement or interpretation of the parties' respective rights and obligations" under the agreement. The plaintiff moves

(Doc. 42) for "reconsideration" of the order (Doc. 38), because the plaintiff timely[1] responded on April 23, 2010, to the motion.

Background

The plaintiff develops renewable fuel projects and operates primarily in Los Angeles, California. In 2008, the defendant Lynn Knox ("Knox") identified the defendant Dupont Alliance, LLC, as a potential investor. The plaintiff met with the defendant John Condo ("Condo"), the "managing member" of Dupont Alliance, BBDA Global Investment Fund, and DAC Global (collectively, "the investors"). Knox and William Sturtevant ("Sturtevant") also participated in the meeting. Condo stated that the investors would provide one hundred percent of the necessary capital for a renewable fuel project proposed by the plaintiff. Condo sent to the plaintiff a "letter of intent and deposit for investment agreement" (the "LOI"), in which Condo, on behalf of BBDA Global Investment Fund ("BBDA"), stated an intent to invest $330 million in the plaintiff's renewable fuel project. Pursuant to the LOI, the plaintiff wired $300,000.00 to BBDA as a "refundable" deposit. Upon receiving the deposit, BBDA sent to the plaintiff "a document that purported to memorialize that the sum of $300,000 Euros was assigned to [the plaintiff] pursuant to a Standby Letter of Credit" (the "Lloyds letter"). The authenticity of the Lloyds letter was unverifiable, because the letter was redacted.

---

[1] Although the 2009 amendments to the Federal Rules of Civil Procedure aim to simplify the computation of deadlines by, for example, permitting a standard fourteen days in which to respond to a motion, Rule 6(d), Federal Rules of Civil Procedure, still provides an additional three days in which to respond to a pleading or motion served under Rule 5(b)(2)(C), (D), (E), or (F). Therefore, a party receiving a motion through CM/ECF has seventeen days in which to respond.

- 2 -

Condo sent also a "conditional commitment letter" (the "CCL"), in which BBDA committed to investing $330 million in the plaintiff's project. Condo signed the CCL on behalf of BBDA. Pursuant to the LOI and CCL, BBDA's financial obligation accrued thirty days after the parties executed a "master investment agreement" (the "MIA") on May 20, 2009. On May 29, 2009, Condo informed the plaintiff that the money would arrive on October 6, 2009, four months later than anticipated. On August 9, 2009, Condo met with the plaintiff's chairman and vice-president in Los Angeles and assured the plaintiff that money would arrive on October 6, 2009. After BBDA failed despite assurances to provide the money, the plaintiff demanded both a return of the deposit and an accounting. BBDA neither returned the deposit nor provided an accounting.

The plaintiff sued (Doc. 1) the investors, Condo, Knox, and Sturtevant[2] in the District Court for the Central District of California and alleged that the defendants "knowingly developed and perpetrated . . . [a] scheme with the intent to induce [the plaintiff] to enter into the LOI, CCL[,] and MIA and to defraud" the plaintiff and retain the $300,000.00 deposit. On December 29, 2009, Condo and the investors moved (Doc. 7) either (1) to dismiss or stay the case pending arbitration or (2) to transfer. A January 28, 2010, order (Doc. 25) transferred this case to the Middle District of Florida, and Condo and the investors again moved (Doc. 35) to dismiss or stay the case pending arbitration. On April 26, 2010, Knox moved (Doc. 39) to join the motion (Doc. 35).

---

[2] On January 22, 2010, the Clerk for the Central District of California defaulted Sturtevant.

Discussion

In moving for arbitration, the defendants cite to both the CCL and the MIA, each of which contains an arbitration agreement. The CCL states that "[a]ny dispute arising in connection with the enforcement or interpretation of the parties' respective rights and obligations under the [CCL] and/or the Master Financial Agreement shall be arbitrated with proceedings to be binding and conducted by the American Arbitration Association." The MIA states that the parties shall arbitrate any dispute "arising in connection with the enforcement or interpretation of the parties' respective rights and obligations" under the agreement. (Doc. 1-1) In opposing arbitration, the plaintiff states (1) that "the only money [the plaintiff] remitted to the . . . [defendants] was the $300,000, which was sent pursuant to the terms of the LOI. The LOI does not contain an arbitration provision" and (2) that the plaintiff's "claims are not dependent on the CCL and MIA" because the plaintiff's "claim premised on Section 1962(c) of the Racketeer Influenced and Corrupt Organizations Act ripened when [the plaintiff] suffered injury as a result of the . . . [defendants'] receipt of the sum of $300,000." Additionally, the plaintiff contends that, even if each claim is arbitrable, the defendants waived the right to compel arbitration by moving to dismiss under Rule 12(b)(6).[3]

The Federal Arbitration Act (the "FAA") establishes "strong federal preference for arbitration of disputes" and that preference "must be enforced [if] possible." Musnick v. King Motor Co., 325 F.3d 1255, 1258 (11th Cir. 2003).

---

[3] Each of the defendants' motions to dismiss (Docs. 7, 18, 35) requests, in the alternative, to stay this action pending arbitration.

- 4 -

> The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983). "[A]n arbitration provision within a contract admittedly signed by the contractual parties is sufficient to require the district court to send any controversies to arbitration." Chastain v. Robinson-Humphrey Co., Inc., 957 F.2d 851, 854 (11th Cir. 1992) (Birch, J.). The facts alleged in the complaint—and not the cause of action—determine whether a controversy is arbitrable in accord with the parties' agreement. See Gregory v. Electro-Mechanical Corp., 83 F.3d 382, 384 (11th Cir. 1996) ("Whether a claim falls within the scope of an arbitration agreement turns on the factual allegations in the complaint rather than the legal causes of action asserted."). Accordingly, "a party may not avoid broad language in an arbitration clause by attempting to cast its complaint in tort rather than contract." McBro Planning & Devel. Co. v. Triangle Elec. Const. Co., Inc., 741 F.2d 342, 344 (11th Cir. 1984). Additionally, "statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991); see Shearson/American Exp., Inc. v. McMahon, 482 U.S. 220, 240 (1987) (finding that a plaintiff may "effectively vindicate [a] RICO claim in an arbitral forum.").

A written agreement signed by all parties to the litigation is not a prerequisite to a party's compelling arbitration. "Although arbitration is a contractual right that is generally predicated on an express decision to waive the right to trial in a judicial forum,

. . . the lack of a written arbitration agreement is not an impediment . . . ." Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753, 756-57 (11th Cir. 1993). Under certain exceptions, a third party, i.e., a person not a signatory to the arbitration agreement, may compel arbitration. MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir. 1999). To compel arbitration, the third party must show either equitable estoppel, "agency or related principles," or that the signatories agreed to confer the benefits of the contract on a third party. Equitable estoppel applies if:

> the signatory to a written agreement containing an arbitration clause "must rely on the terms of the written agreement in asserting [its] claims" against the nonsignatory. When each of a signatory's claims against a nonsignatory "makes reference to" or "presumes the existence of" the written agreement, the signatory's claims "arise[ ] out of and relate[ ] directly to the [written] agreement," and arbitration is appropriate.

177 F.3d at 947 (quoting Sunkist Soft Drinks, 10 F.3d at 757-58) (citation omitted). Under "agency or related principles," arbitration is appropriate if "'the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided.'" 177 F.3d at 947 (quoting Boyd v. Homes of Legend, Inc., 981 F. Supp. 1423, 1432 (M.D. Ala. 1997)).

A party waives the right to compel arbitration if "[the] party seeking arbitration substantially participates in litigation to a point inconsistent with an intent to arbitrate and this participation results in prejudice to the opposing party." Morewitz v. West of England Ship Owners Mut. Prot. & Indem. Ass'n, 63 F.3d 1356, 1366 (11th Cir. 1995); Price v. Drexel Burnham Lambert, Inc., 791 F.2d 1156, 1158 (5th Cir. 1986). Prejudice

may result if the "party seeking arbitration allows the opposing party to undergo the types of litigation expenses that arbitration was designed to alleviate." 63 F.3d at 1366.

In this action, both the CCL and MIA require arbitration of a dispute "arising in connection with" either party's rights or obligations under the agreement. In the LOI, CCL, and MIA, BBDA declares BBDA's intent to invest $330 million in the plaintiff's project, and the plaintiff allegedly relied to the plaintiff's detriment on BBDA's declaration. The plaintiff claims (1) that the plaintiff "satisfied all the terms and conditions necessary to trigger the . . . [d]efendants' funding obligations;" (2) that, "[p]ursuant to the MIA, the . . . [d]efendants were obligated to invest the sum of [t]hree [h]undred [t]hirty [m]illion [d]ollars ($330,000,000) for the development of the [plaintiff's] [p]rojects with thirty (30) days after its execution;" (3) that, "[d]espite representations made by means of electronic mail, interstate telephone calls, and/or U.S. Mail, the . . . [d]efendants failed and continue to fail to invest the sum . . . or provide an accounting of its rents, issues and profits; and (4) that "the representations made to [the plaintiff] . . . were knowingly false when made, and were made . . . with the intent and effect of inducing [the plaintiff] [to] enter into the LOI, CCL[,] and MIA and to remit the [r]efundable [d]eposit." Although Condo signed the LOI, CCL, and MIA on behalf of only BBDA, the plaintiff asserts several claims against both Condo and the other investors, which claims all derive from BBDA's failure to satisfy BBDA's financial obligation. Condo allegedly acted as the "managing member" of each investor. Additionally, the plaintiff alleges that Knox, acting "as a commercial loan broker[]" for the plaintiff, breached a duty of care owed to the plaintiff when Knox "failed to exercise due diligence

- 7 -

regarding [Knox's] efforts to secure funding for [the plaintiff] with the . . . [d]efendants." For the plaintiff's claim against Knox, the plaintiff relies on both Condo and the investors' alleged fraud in connection with BBDA's investment promise. Each claim arises "in connection with" the CCL and the MIA.

Neither Condo, nor the investors, nor Knox (who ostensibly proceeds pro se) waived the right to compel arbitration. The defendants' seeking dismissal as an alternative to staying this action pending arbitration comports comfortably with an intent to seek arbitration. The defendants sought to compel arbitration three times since the plaintiffs' filing of the complaint. The plaintiff shows neither that Knox's answer constitutes "substantial participation" in the litigation nor that the plaintiff suffers any prejudice.

### Conclusion

Accordingly, the plaintiff's motion for "reconsideration" (Doc. 42) is **GRANTED**. However, no argument advanced by the plaintiff warrants a departure from the April 23, 2010, order (Doc. 38). Therefore, the motion (Doc. 35) to stay this action pending arbitration is **GRANTED** and this action is **STAYED** pending arbitration. The parties shall proceed to arbitration in accord with the parties' agreements.

ORDERED in Tampa, Florida, on May 25, 2010.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE